Next case on the calendar is Monaco v. Sullivan. William Brooks Good morning, Your Honors. My name is William Brooks. May it please the Court? I would like to address first the decertification issue and then the substitute process issue facing this Court. The District Court abused its discretion in two ways when it decertified the class. First it failed to recognize the distinction between class actions that involve damages and class actions for which injunctive relief is the only relief given by the Court. Where you have injunctive relief, it's not about compensating past conduct. It's about ensuring that there will be no wrongs in the future. And past conduct is not relevant except to the extent that it serves as proof of what future conduct may be by the defendants. And therefore, unique defenses relating to the individual class representative really have no bearing on the nature of the claims or litigation that the class representative is going to put forth. I don't quite follow that. You're proposing a regime under which your client could go forth seeking injunctive relief and making arguments and so forth on behalf of people who were arguably not dangerous. Your client has been adjudicated dangerous. His claims it seems to me are not typical of the claims of the class. They're standing issues. He's not able to get relief on his own with respect to himself that would benefit the class. And his interests just diverge from the class. Well, no, Your Honor, because with any B-2 class, particularly when you have claims that are inherently transitory, there will be no relief that flows to the named plaintiff. It will only go to future members of the class. And therefore, you have Your Honor, in your theory, just anybody could, John Smith could be an adequate class representative. No. Individuals who face the real and immediate threat of harm at the time of the filing of the litigation, who raise claims that are typical of class members and otherwise satisfy the Rule 23 criteria, can serve as class representatives. Let's say it's possible that Mr. Monaco could represent non-dangerous people, but the standard of review is abuse of discretion. Was it an abuse of discretion for the district court to say, no, I don't think he should be able to do this? Well, it was an abuse of discretion in two ways. One, the district court, again, failed to recognize that unique defenses have no bearing on claims where a class representative is seeking injunctive relief only, because we are not looking at past conduct. Two, the district court abused its discretion when it found that collateral estoppel applied to Mr. Monaco in the first place, because Mr. Monaco wasn't given a full and fair Are you suggesting past conduct is irrelevant to whether an injunction should issue? What I'm suggesting is it has some relevance, but it's not dispositive, and it does not necessarily It has some relevance. He's not going to be able to testify that the relief is necessary. He certainly can, Your Honor, because he's in a position Not based on his own experience He can certainly talk about how he was given a very cursory evaluation. The district court found that a common question was whether physicians ignore statutory and clinically accepted criteria when they encounter symptoms of mental illness. This is something that Mr. Monaco can certainly testify to, to the extent that he can testify to lay matters, including the nature of the evaluation given to him. He might be able to testify to the nature of the evaluation, but it's hard for me to see an abuse of discretion in determining that he's not typical of those who receive much more cursory evaluations, who didn't have the benefit of five psychiatrists examining him, a hearing, cross-examination, and who, at the end of the day, don't have a finding of dangerousness. Perhaps you would have a stronger case if you were correct that collateral estoppel is inapplicable here, but I'm also having trouble with that, so maybe you can help me out on both prongs. This court has recognized when someone is not given the opportunity to appeal, he or she is denied the opportunity, a full and fair opportunity for review. The appellate division dismissed his appeal as moot. The district court said, well, Mr. Monaco did not move fast enough. Well, Mr. Monaco did everything in a timely fashion, and I suggest that if Mr. Monaco attempted to sue his counsel for either ineffective assistance of counsel or legal malpractice for not acting timely enough, there is simply no way in the world he would win because counsel acted in a timely manner. Let me go back for just one minute, please, to the decertification of the class. Yes. Judge Garifuss gave afforded, what, a number of months, if not years . . . Three months. Three months to come up with an alternative class representative, but none was put forward. I mean, so he wasn't, as I read the record, unsympathetic to the class situation. He obviously would have given it another look if a class representative who didn't have these problems surfaced, and from what you're saying, there are lots more who didn't have a class representative for Mr. Monaco's problems than had the problem. Yes. There are numerous potential class representatives. I can tell you it's not that easy to find because . . . No, I get that. I mean, I . . . For what it's worth, I could tell you that I've been in touch with some public defender or legal aid type organizations, and I know that, you know, talking to someone at Brookwood Defenders, there's someone who may be coming up with . . . who may have standing, depending upon how the psychiatric incompetency evaluations play out in the next two weeks. So they are out there, and . . . They're out there, but they're not in the case. I mean, are we . . . you know, do we rely on the possibility that a plaintiff may materialize . . . No, you don't, Your Honor. But what you recognize is that Mr. Monaco was denied a full and fair opportunity to appeal, and furthermore, that there is not . . . Yes? Under state law, the dismissal and appeal on mootness does not deprive the lower court judgment of preclusive effect. There are cases that so hold. This court interpreting state law said when in . . . Well, in the New York Court of Appeals, cases are cited in the state's brief. Those cases simply said where a case is dismissed on appeal, that there is still preclusive effect. Yes. But that doesn't . . . I think that's different from finding that when one is denied an opportunity for review, then . . . It's not that he's denied an opportunity for review. He appeals, and the appeal is dismissed because it's moot. I mean, that was his opportunity. But unless the appellate court vacates the lower court's decision remains intact, as I understand New York law . . . Then this court's decision in Watkins is at variance with New York law. I see my time is up. Thank you, Your Honor. May it please the Court, Seth Rakosky for the State Appellees. This Court should affirm the judgment below with respect to the State defendants for two reasons. First, the District Court correctly granted summary judgment with respect to the individual defendants. And second, it acted well within its discretion when it decertified the subclass. I'd like to begin with the claims against the individual defendants, which are clearly barred by principles of collateral estoppel. As the Court noted, under New York law, there are only two requirements for collateral estoppel to apply. The first is whether or not the issue was actually and necessarily decided. In this case, Monaco actually conceded that below. That's in the party's 56.1 statement, so that's already been decided. To the extent there's any dispute about that, a close read about the facts of the hearing show that it was obviously decided. It was squarely presented at the hearing. It was only argument, really, on appeal that it didn't have a full and fair opportunity to litigate the issue because its appeal became moot. However, Judge Shin, as you noted, under New York law, New York law is very clear that the dismissal of an appeal does not deprive the lower court judgment of preclusive effect. What about Watkins? I'm sorry? Watkins? Well, that's right. So, well, first of all, Watkins is distinguishable on facts. That's a case about a preclusion hearing where a party never had an opportunity whatsoever to appeal, which is not this case. In this case, he had an opportunity to appeal, and he actually had an opportunity to apply to the appellate division to ask them to vacate the lower court's ruling. That didn't happen in this case. This case is squarely within Adirondack League Club. That's right, and the Nautilus case that we cite is a recent example from just 2017. This is a familiar doctrine not only in state courts, but it also has analogs in federal court practice as well. So the collateral estoppel effect is just binding here, and that feeds into the decertification of the class. It's our contention that the district court was not only proper, but well within its discretion to decertify the class for several different reasons. The first is the collateral estoppel point, which, because he's asserting claims on behalf of individuals who are asserted to be non-dangerous, and the relevant claims that are left in this case all have to do with claims that they are being wrongly found to be dangerous. He's a particularly poor representative in this case because he himself was definitively found to be dangerous. He just barred from contesting that. But even if that weren't true, Judge Livingston, as you noted, just the particular facts of his case, even absent the collateral estoppel effect, make him a particularly poor representative in this case because he's a paradigm example of why the types of procedures that he's challenging can arrive at a correct result. He was given adequate process. He was reviewed by five different psychiatrists. That's more than typical in these circumstances. The issue of dangerousness was squarely presented. It was fully vetted in front of a court. He had an opportunity to challenge it for review. This is an example of how the process works correctly. And so his own circumstances undermine a key plank that's being asserted by the class. And beyond that, Judge Parker, as you noted yourself, there are standing issues and incentive problems as well. At this point in the game, we're now 20 years past when these claims were initially brought. There's no indication that he's ever going to be subject to this type of process again. There's no imminent threat of harm. And there wasn't even a threat of harm at the time that these claims were being asserted by the class. At that time, there was another named plaintiff in the case. There was a law clinic. That law clinic drove a lot of this litigation. It's now out of the case. So circumstances have changed. A lot has happened. And given the totality of all of those circumstances, the court was well within its discretion to decertify the class. And as you noted, they even gave an extra several months to find another plaintiff to add and insert as a plaintiff. Unless the court has any further questions, we're prepared to talk about the merits. Our only contention on that is really just that we're asking this court to just adhere to its prior precedent. There's a long line of precedent from beginning in Supreme Court's holding in Youngberg and going all the way up through Bulmer. It's our contention that that is squarely on point. And we're just asking, to the extent the court were inclined to ever reach those issues, to merely just apply it. Thank you. Good morning, your honors. May it please the court, my name is Drew Scharmer. I'm an assistant Suffolk County attorney. I'm representing appellee Dr. William Packard with respect to this matter. I note that Mr. Brooks has not argued anything with respect to the claims against my client, which were dismissed in the granting of the summary judgment by the court below. I would just respectfully submit that the court below be affirmed. If the court has any questions for me, I would be happy to answer them, but if not, I'll rely on the brief. The district court determined that the record contained no evidence suggesting that Dr. Packard prescribed lithium posed a threat to Monaco, but doesn't recent case law suggest that the district court applied the wrong standard? Well, if your honor is referring to Darnell, okay. I would respectfully submit that even applying the Darnell standard of using objective . . . looking at it objectively and subjectively, as far as whether Dr. Packard perceived a serious risk of harm to Mr. Monaco, I would submit that he acted reasonably under the circumstances. He saw Mr. Monaco a total of five times in 1998. He was a jail psychiatrist. Mr. Monaco has done a great job of taking care of Mr. Monaco. It takes no issue with respect to the first two times that Dr. Packard saw him, because he continued with the lithium prescription that was prescribed by another doctor, and then also put him on prolixin. He initially thought that there was an acute manic bipolar episode, based on his observation at that time, that he was extremely psychotic. And then after Mr. Monaco was, I guess, bailed and then discharged to the Eastern Long Island Hospital, where he remained for about a week, where they monitored to him around the clock, and then when he returned to the Suffolk County Jail, he again saw him three times. The first time he saw him after he returned to the jail, he noted that he was greatly improved, and also that the hospital had taken him off of the lithium. And that's when Dr. Packard started to believe maybe this may be schizophrenia, not bipolar. Mr. Monaco does not dispute the fact that the difficulty in differentiating diagnosis of acute bipolar episodes or manic episodes and acute schizophrenic episodes. But really, Dr. Packard acted reasonably in relying upon his improvement upon his return from the hospital, and the fact that the doctor at the hospital indicated that he had three days where he had no thought disorder. So he saw his improvement. So for those reasons, I would submit that he subjectively and objectively did not pursue a serious risk of harm to Mr. Monaco in not prescribing him lithium. Thank you for your argument. Thank you, Your Honors. Okay, first let me respond to the notion that Adirondack League makes clear that Mr. Monaco was collaterally stopped. The court, the Court of Appeals, the New York Court of Appeals in Adirondack League recognized that a litigant's inability to appeal should not have adverse legal consequences. This is squarely the type of case that has adverse legal consequences. Second, I respectfully suggest that the process Mr. Monaco went through was not particularly good because the entire process was essentially tainted by the initial determination In other words, the certifications by the doctors were in his record. The record went into evidence at the commitment hearing. The state's expert at the commitment hearing relied on these certifications to bolster her testimony. So one problem fit into another. And I respectfully would like to raise this hypothetical to show why standing and there is a viable class, if in Gerstein the class representative simply died and disappeared, I think there is still no question that the Supreme Court would have found standing because the attorney had claims of other individuals and the attorney could and was going to vigorously represent the claims of the class. That's what happens when you have a B2 class where there is initially standing as the district court found in this case. As to Dr. Packard and the notion that he was not deliberately indifference because he believed Mr. Monaco was greatly improved upon release. He testified that that was initially his impression, but it became abundantly clear after meeting with him within minutes that he was not greatly improved. He learned that he was sent back because he had thrown a chair, that he was still manifesting symptoms. So when you look at all the facts, I think a reasonable jury could recognize that or conclude that Dr. Packard simply wanted to do as little work as possible, did not want to deal with Mr. Monaco, wanted to wash his hands of Mr. Monaco and failed to intervene appropriately when Mr. Monaco made numerous attempts to request lithium to treat his bipolar disorder. Thank you, Your Honors. Thank you very much for your arguments. All three of you, well earned.